## 10671.

### BRICE v. McDOW *ET AL.*

#### (108 S. E. 84)

1. SCHOOLS AND SCHOOL DISTRICTS—YORKVILLE DISTRICT HELD ENTITLED TO ISSUE BUILDING BONDS WITHOUT LIMITATION.—The amendment of 1914 to Const. Art. 8, §7, and Article 10, § 5, gave the Yorkville district of York County power without limitation to issue bonds to raise funds to pay for construction of buildings.

2. CONSTITUTIONAL LAW—EXISTING STATUTE HELD TO FURNISH MACHINERY FOR ISSUING BONDS AFTER AMENDMENT OF CONSTITUTION.—Act Feb. 17, 1911 (27 St. at Large, p. 417) authorizing board of trustees of Yorkville school district to issue $35,000 in bonds, furnished necessary machinery for an election to determine issuance of bonds under the subsequent Constitutional amendment of 1914 to Const. art. 8, § 7, removing the limits provided thereby, and an act of Legislature was unnecessary.

3. CONSTITUTIONAL LAW—STATUTE MAY NOT RENDER INVALID BONDS LEGAL WHEN ISSUED.—If bonds of school district were valid when issued, no act of the Legislature could invalidate or change them, as it would impair obligations of contract.

4. CONSTITUTIONAL LAW—PROVISIONS PRESUMED AS SELF-EXECUTING.—The general presumption of law is that all constitutional provisions are self-executing, and are to be interpreted as such rather than as requiring ·further legislation, for the reason that unless such were done it would be in the power of Legislature to practically nullify a fundamental of legislation.

5. STATUTES—SPECIAL ACT WILL NOT REPEAL GENERAL LAW.—The general rule is that a special act will not repeal a general law unless there is a manifest repugnancy between the provisions of the two acts, and where there is a statute general in its terms and another particular statute dealing with the same subject in a particular way or particular purpose, the two should be read together and harmonized, if possible, letting both of them stand.

6. SCHOOLS AND SCHOOL DISTRICTS—SPECIAL ACT AS IN BUILDING BOND ISSUE BY YORKVILLE DISTRICT HELD NOT TO DENY DISTRICT RIGHT TO MAKE USE OF GENERAL LAW.—Act. Feb. 17, 1911, (27. St. at Large, p. 417), authorizing board of trustees of Yorkville district to issue bonds to the amount of $35,000 for erection of buildings and other purposes, which was in excess of 4 per cent. of assessed valuation, was intended for a particular time and purpose, and did not deny the right of the school district to make use of the general law (Civ. Code 1912, § 1743), limiting indebtedness of any school district to 4 per cent. of assessed valuation.

7. SCHOOLS AND SCHOOL DISTRICTS—ELECTION ON BOND ISSUE HELD PROPERLY CALLED BY TOWN COUNCIL.—Inasmuch as the town of York is a municipality, and the limits of Yorkville school district are coincident, an election to determine whether or not the school district should issue bonds, declared by the town council at the request of the board of trustees of the school district, upon petition, was not in violation of Civ. Code 1912, § 1743, requiring that an election be held by the board of trustees.

8. SCHOOLS AND SCHOOL DISTRICTS—FILING OF PLAT NOT CONDITION PRECEDENT FOR SPECIAL ELECTION.—Filing of a plat in the office of the clerk of court was not a condition precedent for a special school election to determine the question of issuing bonds under Civ. Code 1912, § 1743.

9. SCHOOLS AND SCHOOL DISTRICTS—RESOLUTION AS TO SIGNING OF BOND UNISSUED MAY BE AMENDED.—That resolution of Board of Trustees of school district only required that bonds be signed by chairman and secretary, instead of by the full board, was immaterial in a suit to determine the validity of the bonds, where the bonds were not yet issued, as the trustees could adopt another resolution rescinding the old one, providing in the new resolution that the signatures of the full board be placed upon the bonds.

10. SCHOOLS AND SCHOOL DISTRICTS—OBJECT OF BONDS PROPERLY EXPRESSED IN PETITION AND A NOTICE OF ELECTION—Petition for election and notice ordering an election on question of issuing bonds were proper where it was stated therein that the bonds were to be used for the purpose of erecting buildings, repairing, altering, and equipping old buildings for school purposes, under Civ. Code 1912, § 1743, and Const. Art. 8, § 7, as amended in 1914.

Before MOORE, J., York, May, 1921. Affirmed.

Action by J. S. Brice against Thomas F. McDow et al. as Trustees Yorkville School District No. 11, to enjoin the issuance of bonds. From decree denying the injunction the plaintiff appeals.

The judgment of the lower Court was as follows:

This is a friendly suit, brought by the plaintiff to determine the validity of a proposed bond issue of $125,000 for Yorkville school district, York County. The complaint is a very voluminous one, and sets forth all the facts in regard to the proposed issue, and alleges that from these facts and

the law, as shown, the Board of Trustees are without authority to issue the bonds for the reasons given.

The service of the complaint is duly admitted by the defendants, constituting the Board of Trustees of the district, and the said defendants have filed an answer admitting all the facts stated in the said complaint, except in paragraph 6 thereof, that they are without authority to issue the bonds. They allege, on the contrary, that by reason of the facts and the law recited in the complaint they have full authority so to do.

The undisputed facts as appear then are as follows:

That Yorkville school district was incorporated under the special act of the Legislature in December, 1888 (Act Dec. 22, 1888 [20 St. at Large, p. 246]), and under this act the Board of Trustees created thereby are vested with the management of school affairs in the said district, including the power to issue bonds for school purposes. That act fixed the limit of bonds at $4,000. In 1901 the original Act of 1888 was amended (Act Feb. 15, 1901 [23 St. at Large, p. 845]), giving the Board of Trustees additional power to issue bonds in the manner and form therein provided, not exceeding $15,000. In 1911 an act was passed by the General Assembly (Act Feb. 17, 1911 [27 St. at Large, p. 417] ), giving the Board of Trustees of the said school district authority to issue bonds of the form and amount they might deem necessary for the purpose of erecting new school buildings, purchasing lot, repairing old buildings, and other school purposes, the said bonds to be issued not to exceed $35,000.

In 1914 a joint resolution was adopted by the General Assembly of South Carolina, providing that the limitations of indebtedness, as contained in section 7, art. 8, and Section 5, Art. 10, of the Constitution of 1895, should not apply to Yorkville school district, when the proceeds of the bonds were applied exclusively to erecting, making addi-

tions to school buildings in the said district, and where the question of incurring indebtedness was submitted to the qualified electors of the district, as provided in the Constitution. It appears that this joint resolution was duly and legally adopted in accordance with the provisions of section 3, art. 16, of the Constitution, the yea and nay vote being taken theron, as appears in Senate Journal 1914, pp. 806, 839, 840, 1043. In accordance with this joint resolution, constitutional amendment therein provided was submitted to the voters of the State of South Carolina at the general election in 1914, and, as a result of the election, the amendment was adopted. Thereafter, in 1915 (29 Statutes, 107), the General Assembly passed an act ratifying the said constitutional amendment proposed by a joint resolution, as stated above. It is alleged in complaint and admitted in answer that the joint resolution proposing constitutional amendment was adopted in accordance with Constitution, and same duly recorded in Senate Journal 1914, p. 806. This is found as a fact. No other acts of the Legislature have been passed in relation to the Yorkville school district.

The first question raised by the plaintiff is that, under the law, as above stated, and without regard to the facts and the manner of conducting the election, which will be hereinafter noted, that the said school district is without authority to issue the bonds proposed, it having been created by special act of December 22, 1888, and having had authority conferred and restrictions imposed upon it from time to time by a special act, the last of which was passed February 17, 1911, limiting the maximum amount of bonds to $35,-000; that the said law has not been amended or supplemented, or restriction of the bonded debt therein contained removed.

It is further stated or claimed that the district is not entitled to claim authority of the bond issue by virtue of the provisions of the constitutional amendment above recited,

since the said constitutional amendment simply amounts to the removal of the limitations imposed by the Constitution on the indebtedness of the said school district, and does not thereby confer authority for the issuance of the bonds.

It is further objected in this connection that, even if the said constitutional amendment is to be construed as conferring authority for the issuance of bonds in excess of the amount specified in act of 1911, no machinery for carrying out such authority is provided, and no officers are invested with the power or duty to hold any election for bonds, and that the act of the General Assembly is required to provide such machinery. In this connection, too, is the objection that the proposed bond issue will exceed 8 per cent. of the assessed valuation of the school district, and that it will exceed 15 per cent. of the value of all taxable property in the said district, which also includes the municipality of York.

So then, in consideration of this matter, the objections as noted above will be considered together. The quesion presented by the said objections briefly is: Did the school district of York have the authority to issue bonds in an unlimited amount after the passage of and ratification of constitutional amendment of 1914, or was it necessary that such constitutional amendment be followed by an act of the General Assembly, giving specific authority to issue the proposed $125,000 of bonds? The question is a most interesting one, and, after careful consideration I am of the opinion that the school district did have and does have the power to issue the bonds, and that the objections above noted cannot be sustained. It was held in the case of *Dick v. Scarborough,* 73 S. C. 151; 53 S. E. 86, that Section 5 of Article 8 of the Constitution, providing that cities and towns may acquire by construction or purchase waterworks systems and plants after the question had been submitted to a majority vote of the electors on the question of bonded indebtedness for such purpose; that this section expressly

conferred upon cities and towns the power to issue bonds for the purposes provided. If this is true, it seems that Article 7, § 8, and Article 5 of Section 10 would give to the political subdivision therein named the power to issue bonds up to the limit, provided after such question had been submitted to a vote of the people, as provided by those terms. Therefore the constitutional amendment of 1914, which took off the limit of bonded indebtedness provided for by the foregoing provision, would in itself confer bonding powers in an unlimited amount. If the proper construction of the Scarborough case, cited above, is, as I think it is, that the constitutional amendment did confer authority to issue bonds, then such authority could not be limited or curtailed by any act of the Legislature, and to this extent the limit provided in the Act of 1911 at $35,000 must fall, but all other provisions of that Act of 1911, not being inconsistent with the constitutional amendment, must stand as providing machinery for election, the authority of which was given by virtue of the constitutional provision.

It seems to me, thus, that the constitutional amendment of 1914 might in this respect operate, if that view of it is taken, as an amendment to the act of 1911, by simply removing the limit of indebtedness provided in that act. The principle that the constitutional amendment to the Constitution can amend a prior statute is recognized in the case of *Cleveland v. Spartanburg,* 54 S. C. 83; 31 S. E. 871.

Another case to be noted in this connection is the case of *Bray v. City Council of Florence,* 62 S. C. 57, 39 S. E. 810. In that case it was held that an act of the Legislature limiting the amount of bonded debts of municipalities, in the words of the statute, does not so operate after such limitations have been removed by amendment. The only difference between this Bray case and the case at bar is that in the Bray case the limitation of the statute placed upon cities and towns to vote bonds was, in the exact language of the

Constitution, "not over 8 per cent." An amendment was duly passed to the Constitution, taking off this limit as to the city of Florence, and the city of Florence thereby proposed to issue bonds exceeding the 8 per cent. limitation. The plaintiff contended that the constitutional amendment should have been followed by an act of the Legislature removing its former limitations, and, while the Court decided that such act was not necessary, on the ground that the language of the acts was in accordance with the language of the Constitution, yet it would seem that the principle in this case would be the same. The limitation imposed on the school district was not 8 per cent., but a definite sum of $35,000 by a legislative enactment. Was not the intention of the Legislature by that act simply to say to the school district that it should keep within the constitutional limit? And the effect of the constitutional amendment removing the limitation would be the same in this case as it was in the Bray case. This Bray case also suggests the fact that, if the General Assembly had desired to impose a limitation after the constitutional amendment, a new act would have been necessary. Under the authority of *Dick v. Scarborough,* cited above, it may be doubtful as to whether there was any authority in the Legislature to limit the indebtedness after the constitutional amendment, and if this is the proper construction of the Scarborough case, as I think it is, the principle recognized in the Bray case, if it is recognized, that the Legislature would have the authority after a constitutional amendment to further limit indebtedness, would be practically overruled by the later decision. However, even if we should consider that the principle of the Bray case is correct, instead of the principle of the Scarborough case, the answer here would be that, even though the Legislature might have had authority to limit indebtedness of the Yorkville school district after the amendment, it has not done so, thus implying that it does not care so to

act. After these bonds are issued, if they are valid up to this time, certainly no subsequent Act of the Legislature could invalidate them, for such Act would impair the obligations of contract.

I hold, therefore, that the constitutional amendment of 1914 did confer upon the school district authority to issue bonds, limited only by the discretion of the Board of Trustees, that no further act of the Legislature was necessary, that the machinery for an election had been provided for by the act of 1911, and by previous acts, and that these acts stand so far as the machinery for the election is concerned, and are repealed only so far as the limitation of indebtedness is concerned. The constitutional amendment of 1914 must be regarded as self-executing, taken in connection with the former act. The general presumption of law is that all constitutional provisions are self-executing, and are to be interpreted as such, rather than as requiring further legislation, for the reason that, unless such were done, it would be in the power of the Legislature to practically nullify a fundamental of legislation. 6 R. C. L. p. 58; Black on Interpretation of Laws, p. 21.

It follows from the above conclusion that the objection to the 8 per cent. and the 15 per cent. limitation, as stated in subdivision "g," par. 6, of the complaint, must also fail, for the reason that such limitations are absolutely wiped out by the constitutional amendment.

Having reached the conclusion, therefore, that the bonds proposed to be issued are valid by reason of the constitutional amendment and of the act of 1911, and the previous acts which provided machinery for election, it might not be necessary to go further, but, as the question has been raised in the complaint, and if for any reason the conclusions stated above are wrong, it will be well to consider whether or not the bond issue can be sustained by the provisions of the general law

relating to school districts. This general law is stated in Section 1743 of the Code of 1912, and the provisions of it are substantially recited in the complaint. This act, which constitutes a general law in regard to school district bonded indebtedness, was passed in 1907, and provided that the limit of indebtedness should be 4 per cent. of the assessed taxable property in the district. The last act relating to Yorkville school district was passed in February, 1911, and is a special act in regard to Yorkville school district, so then the question to be considered is whether by the passage of that special act after the enactment of the general law, Yorkville school district would be deprived of the benefits of the general law, if such became necessary. The general rule is that a special act will not repeal a general law, unless there is a manifest repugnancy between the provisions of the two acts; and where the statute is general in its terms, another particular statute dealing with the same subject in a particular way or particular purpose, the two should be read together, and harmonized, if possible, letting both of them stand. 13 Cyc. 1093, 1151; 25 R. C. L. 929.

The principles of statutory construction are more or less elastic, and governed by circumstances. If the general law and the special law are not plainly repugnant, or if the general law is not plainly repugnant, the same should stand together, and the right to plead the general law is not abrogated; or, if the general law imposes conditions upon the issuance of bonds, and the special act authorizes one district to issue bonds without the happening of these conditions, the special act might be regarded as an act for a particular time and purpose, and would not constitute a denial of the right of the district to make use of the general law.

Now, what are the facts that appear here? Let us examine the provisions of the special Act of 1911 and the general school of law (Civ. Code 1912, § § 1698-1835), to see wherein they differ.

(1) The special act of 1911 limits indebtedness of Yorkville district to $35,000; the general act of 1907 limits indebtedness of any school district to 4·per cent. of assessed valuation.

(2) The special act provides that the petition be signed by a majority of freeholders; the general law provided that the petition should be signed by one-third of the freeholders and one-third of the electors.

(3) The general law provided that a plat must be filed before election; the special law contained no such provision.

(4) The special law provided for notice of election for 3 weeks; the general law provided for notice of 10 days.

(5) The general law provided that the proceeds be used for erecting buildings, and for paying indebtedness; the special law provided that the bonds should be used for the purpose of purchasing lot or lots, erecting and furnishing school building, or purchasing or adding to or remodeling or repairing existing buildings for school purposes.

(6) The general law provided that the bonds should be signed by all the trustees; the special law provides that they may be signed only by the Chairman and Secretary of the Board.

Upon consideration of the above distinctions, it will be seen that the special act of 1911 relating to Yorkville school district is more liberal in its terms than the act of 1907, which is the general law. For instance, it appears by the record that the assessed valuation of Yorkville school district in 1910, which was the last valuation before the Act of February, 1911, was passed, was $750,325. Thirty-five thousand dollars is more than 4 per cent. of this assessed valuation, so it is seen that the Legislature was intending to be more liberal with the district by this act than by the general law. In all other respects noted above, except that of the time for publication of notice of election, the special act is also more liberal. Hence, when we have these evi-

dences of liberality of the special act of 1911, it must be taken that the intention of the Legislature was to make that Act an Act for a particular time and purpose, and not to deny the right to the district to make use of the General Law, if such was necessary.

So, having determined that the district had the right to use the general law, let us see if the provisions of the general law have been complied with. Subdivision "e" of paragraph 6 of the complaint states in detail the objection to the use of the general law by the district in this election. The first objection is that the general law provided that the election to be held was not to be held by the trustees of the district. It is alleged as a fact in the complaint, and not denied, that this election was nominally held by the town council of the town of York, but in reality it was by the trustees of the district. The record shows that the petition was signed by more than one-third of the resident electors and freeholders; that this petition was first presented to the Board of Trustees; that the Board of Trustees passed upon the validity of the petition, approved it, decided upon an election by the proper resolution, submitted the matter to the town council of the town of York, naming the managers of election, suggesting the form of the ordinances, and all other details in connection with the election. Inasmuch as the town of York is a municipality, and that the limits of Yorkville school district are coincident with that of the town, and that the laws of the State in regard to special election in municipalities provided that certain acts must be done ,and the election held by the municipal authorities, it is conceded that it was the part of wisdom for this election to be held in the name of the town council of York in order to prevent conflict with other sections of the law. For one thing, books of registration for special election had to be opened by town authorities; could not have been opened by the Board of Trustees. The election was

duly held by virtue of the ordinance passed by the town council at the request of the Board of Trustees. The election was declared by the town council and reported to the Board of Trustees, and the said Board, by a proper resolution, adopted the same.

So, then, no other conclusion can be reached but that the acts of the town council of the town of York in holding and declaring this election was the act of the Board of Trustees, having been done at the request of the Board in the first instance, and having been certified back to the Board in the last instance. Therefore the objection as to the manner of conduct of the election was not in violation of the provisions of the general law.

The next objection is that no plat was filed in the office of the clerk of the Court, as required by the general law. It appears that the limits of the Yorkville school district are well known, the shape being a circle, with a radius of one mile from the center at the intersection of Congress and Liberty streets in said town. Also a plat was on record in the office of the County Superintendent of Education; but in *Dove v. Kirkland*, 92 S. C. 321, 75 S. E. 503, it was held that that Constitution did not require the filing of such plat as condition precedent for election, and such was not necessary.

The next objection, that the bonds are to be signed by the Chairman and secretary, instead of the full Board, is immaterial, for the bonds have not been issued, and this condition can easily be complied with, and all doubt removed simply by the Board of Trustees adopting another resolution and rescinding the old one, providing in the new resolution that the signatures of the full Board are to be placed upon the bonds.

It appears from the record that the form of ballot used at the election was in accordance with the general law, for

the reason that an affirmative ballot was used and a negative ballot was used, the two being separate and distinct.

It is further objected that the petition under which the election was held and the notice ordering the election stated that the purpose for which the bonds were to be used was different from that provided for in the general law, and also that provided in constitutional amendment. The language of the act of 1907 permits the use of proceeds for erecting building, for equipment thereof, for maintaining, and for paying indebtedness. The election in question was for the purpose of erecting buildings, repairing, altering, and equipping old buildings for school purposes. We do not think that the purposes stated in the petition under which the election was held would be in conflict with the general law or that of constitutional amendment. The language of that general law and constitutional amendment is to be construed liberally, and when so construed we think it was the intent of the law to cover all necessary things which might have to be done for maintaining a proper and adequate school system in school districts and of Yorkville school district. Even the purchase of a lot might be justified under the general law, for the reason that the equipping and maintaining of proper school system could not, in a great many instances, be accomplished without the purchase of a lot. The general act and the constitutional amendment, and also Act of February 7, 1911, must certainly be construed as confirming authority for the issuance of bonds for purposes stated in the petition. See, also, *Dick v. Scarborough,* 73 S. C. 151; 53 S. E. 86.

It is therefore concluded that the proposed bond issue can be sustained under the general school law of the State, and is valid. The limit of indebtedness under the general law was originally 4 per cent., but this limit was increased to 8 per cent. by act of 1920; hence the general law as it now

stands would provide the limit of indebtedness in school district to 8 per cent., the exact language of the Constitution, but the constitutional amendment of 1914 removed the limitation, and hence the limitation of the general law being in exact accordance with the language of the Constitution, the constitutional amendment removed that limit under the principle stated in *Bray v. Florence,* supra.

For these reasons, it is ordered, adjudged and decreed that the complaint herein be dismissed, and that the Board of Trustees of Yorkville school district, the defendants herein, be allowed to proceed with this proposed bond issue.

*Mr. J. S. Brice,* for appellant, cites: *Repeals by implication are not favored*: 8 Cyc. 748; *and Constitutional Amendment of* 1914, *did not repeal act of* 1911 (27 Stat. 417).

*Messrs. J. A. Marion and Thos. F. McDow,* for respondents, cite: *Constitutional Amendment of* 1914 (28 Stat. 949,) *removed restrictions upon the district imposed by special acts and by the Constitution, without further legislation*: 73 S. C. 151; 62 S. C. 57; 54 S. C. 83.

June 30, 1921.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by his Honor, Judge Moore, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.