12349

McCOLL v. MARLBORO GRADED SCHOOL DIST. No. 10 *ET AL.*

(141 S. E., 265)

1. CONSTITUTIONAL LAW—CONSTITUTIONAL AMENDMENT PERMITTING SCHOOL DISTRICT TO VOTE BONDS TO AMOUNT EXCEEDING ORIGINAL CONSTITUTIONAL LIMITATION OF INDEBTEDNESS HELD SELF-EXECUTING (CONST. ART. 10, § 5, AS AMENDED [SEE 33 ST. AT LARGE, P. 1781, § 1]).—Amendment of Const. Art. 10, § 5 (see 33 St. at Large, p. 1781, § 1), to permit Marlboro Graded School District No. 10 to vote bonds to amount exceeding original constitutional limitation of its indebtedness, *held* self-executing and effective without enactment of special statute, in view of practically identical language of previous amendments of such article as to other school districts (see Code, 1922, Vol. I, p. 585), and general law as to school bond elections in Civ. Code, 1922, § 2606.

2. CONSTITUTIONAL LAW—LEGISLATURE'S CONTEMPORANEOUS CONSTRUCTION OF CONSTITUTION IS ENTITLED TO RESPECT IN DETERMINING WHETHER AMENDMENT IS SELF-EXECUTING.—The Legislature's contemporaneous construction of Constitution is entitled to respect by Supreme Court in determining whether amendment thereof is self-executing or requires special statute to put it into effect.

3. CONSTITUTIONAL LAW—STATUTE WILL NOT BE HELD UNCONSTITUTIONAL, UNLESS INVALID BEYOND REASONABLE DOUBT.—Supreme Court will hold no statute unconstitutional, unless its invalidity appears to be established beyond a reasonable doubt.

4. CONSTITUTIONAL LAW—EVERY PRESUMPTION IS INDULGED IN FAVOR OF CONSTITUTIONALITY OF STATUTE.—Every presumption is to be indulged in favor of the constitutionality of a statute.

5. CONSTITUTIONAL LAW—CONSTITUTIONAL PROVISIONS ARE INTERPRETED AS SELF-EXECUTING, UNLESS CONTRARY CLEARLY APPEARS.—All constitutional provisions are deemed self-executing and so interpreted, rather than as requiring further legislation, unless the contrary clearly appears.

6. SCHOOLS AND SCHOOL DISTRICTS—CONSTITUTIONAL AMENDMENT, AUTHORIZING INCREASE IN SCHOOL DISTRICT'S BONDED INDEBTEDNESS, HELD NOT TO REQUIRE SIGNATURE OF ELECTION PETITION BY MAJORITY OF FREEHOLDERS (CONST. ART. 2, § 13; ART. 8, § 7, AND ART. 10, § 5, AS AMENDED [SEE 33 ST. AT LARGE, P. 1781, § 1]; CIV. CODE, 1922, § 2606).—Amendment to Const. Art. 10, § 5 (see 33 St. at Large, p. 1781, § 1), requiring that question of incurring additional

indebtedness authorized thereby be submitted to qualified electors of school district created thereunder as provided in Constitution, *held* not to require that petition for election be signed by majority of freeholders, as provided in Const. Art. 8, § 7, and Article 2, § 13, in case of municipal bonded indebtedness, instead of one-third as required by general school bond law (Civ. Code, 1922, § 2606).

7. Schools and School Districts—Serial School Bonds Held not in Conflict with Statute Intended Solely to Require That Bonds be in Serial Form (Civ. Code, 1922, § 2606; Const. Art. 10, § 5, as Amended [See 33 St. at Large, p. 1781, §1]; Act April 9, 1927 [35 St. at Large, p. 263).—Serial school bonds, proposed to be issued as authorized at election under Civ. Code, 1922, § 2606, and amendment to Const. Art. 10, § 5 (see 33 St. at Large, p. 1781, § 1), *held* not in conflict with Act April 9, 1927 (35 St. at Large, p. 263); entire purpose of which was to require that bonds be in serial form in certain cases.

8. Schools and School Districts—Recorded School District Plat Reciting Survey Held Sufficient, Where Territory was Clearly Defined by Statute and not Subsequently Changed (Act Dec. 24, 1886 [19 St. at Large, p. 613]).—Graded school district plat, recorded about December 26, 1888, and stating that district was surveyed December 26-31, 1888, *held* sufficient compliance with statute, where territory of district was clearly defined by Act December 24, 1886 (19 St. at Large, p. 613), creating it, and not subsequently changed or altered; there being no practical necessity for any additional survey or plat.

In the original jurisdiction, December, 1927. Petition dismissed and injunction dissolved.

Original application by H. L. McColl, for himself and other taxpayers, to enjoin the Marlboro Graded School District No. 10 and others from issuing bonds of such district.

*Mr. H. J. Riley,* for petitioner.

*Messrs. McColl & Stevenson,* for respondents.

January 10, 1928.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

This is an application in the original jurisdiction of the Court permanently to enjoin the issuance of bonds of the Bennettsville School District, known as Marlboro Graded

School District No. 10. The petitioner, for himself and other taxpayers of the district, seeks to have the proposed bonds declared unlawful upon a number of grounds, specified in the agreed statement of facts attached to the petition, and submitted as a controversy without action.

It appears that in 1926 because of the seriously crowded condition of the school buildings the trustees began to make arrangements for the erection of a new building and under the authority of an Act of the General Assembly purchased a suitable site for a new school and have paid for same. Because of the 8 per cent. limitation of the Constitution the trustees were advised that the district had no power to issue the amount of bonds necessary for the purposes of a new building. Thereafter an amendment to Article 10, § 5, of the Constitution, was adopted in legal fashion permitting Marlboro Graded School District No. 10 to vote bonds to an amount not exceeding 16 per cent., *"under such restrictions and limitations as the General Assembly may prescribe and where the question of incurring such indebtedness is submitted to the qualified electors of said school district as, provided in the Constitution upon the question of bonded indebtedness."* (See 33 St. at Large, p. 1781, § 1.) It is under this language, quoted verbatim from the amendment, that the major objections hereafter discussed arise.

After the amendment referred to above was adopted, the school district held an election upon the question of issuing bonds, in accordance with the terms of the general Statute as to school bond elections, found in Section 2606, Vol. 3, of the Code. The provisions of this Section were complied with, the requisite number of electors and of resident freeholders signed the petitions, and all legal requirements were complied with to make a valid election as far as Section 2606 of the Code was concerned. In this election there was a large majority of votes cast for the issuance of the bonds.

As appears by the agreed statement of facts there is no controversy except as to the features mentioned below.

It is contended by petitioner that inasmuch as the constitutional amendment authorized the district to vote bonds under such restrictions and limitations as the General Assembly may prescribe, it was necessary for the General Assembly actually to take some step to put the constitutional amendment into effect, whereas no act of any kind was passed by the General Assembly, but the election was thereafter had under the terms of the general Statute, as to school bond elections above mentioned.

Another way of stating this criticism is that the constitutional amendment was not self-executing and required the aid of legislative action. This objection is not well founded. The language of this amendment is practically identical with several previous amendments to Article 10, § 5, of the Constitution, as printed in Volume 1 of the Code of 1922. The same language occurs in the amendment as to Laurens School District, Hunter School District No. 5 of Laurens County, and Lancaster School District. It would therefore appear that under the construction of the Constitution by the Legislature itself, no such special Statute as here contended for was necessary to put the constitutional amendment into effect. The contemporaneous construction given by the Legislature to the Constitution is entitled to respect at the hands of this Court under the rule many times stated. *Bradford v. Richardson,* 111 S. C., 205; 97 S. E., 58. *Thompson v. Livingston,* 116 S. C., 412; 107 S. E., 581. *Evans v. Beattie,* 137 S. C., 496; 135 S. E., 538.

Furthermore, this Court has frequently declared the rule that it will hold no Statute unconstitutional unless the invalidity appears established beyond a reasonable doubt, and that every presumption is to be indulged in favor of constitutionality. *McKiever v. City of Sumter,* 137 S.

C., 266; 135 S. E., 60. *Spartanburg County v. Miller*, 135 S.. C., 348; 132 S..E., 673.

The general presumption of law and the specific rule frequently laid down in this State is that all constitutional provisions are self-executing, and are to be interpreted as such, rather than as requiring further legislation, unless the contrary clearly appears. *Brice v. McDow*, 116 S. C., 324; 108 S. E., 84. *Becker v. A. C. L. R. Co.*, 128 S. C., 131; 121 S. E., 476.

The whole contention is that there ought to have been some action taken to put the constitutional amendment into effect. It is not denied that the Legislature could have declared that the election should be held under the terms of the general law as was done in this case. The Legislature had already adopted and set up a general method of holding school bond elections. This method was followed, as admitted, by Marlboro Graded School District No. 10. Under the principles of law declared in the above cases, it would not appear that there was any necessity for a specially adopted Statute to put the above amendment into effect.

But it is also objected that the constitutional amendment requires the question of incurring indebtedness to be "submitted to the qualified electors of said School District as provided in the Constitution upon the question of bonded indebtedness," and that inasmuch as there is no provision at all in the Constitution requiring submission of bonded indebtedness to the electors except the indebtedness of a municipality, it is therefore necessary that the petition for this school election should be signed by a majority of the freeholders, as set forth in Article 8, § 7, and Article 2, § 13, in case of municipal bonded indebtedness. It is admitted that the petitions in this case were signed by one-third of the freeholders as required under the general school bond law, but that by reason of the above-

quoted language of the amendment, the petition should have been signed by a majority of the freeholders.

We do not think that the amendment is fairly susceptible of the construction here contended for. As already stated, the same amendment was adopted years ago as to several of the other school districts of the State. It could not have been the purpose to seriously change the method of bringing about a school bond election. The obvious purpose in each instance was to enlarge the limit of the Constitution upon school district indebtedness. So it was obviously with this amendment. The whole purpose was to increase the limit from 8 per cent. to 16 per cent. of the value of the taxable property of the school district. Therefore it would appear that if the amendment was properly signed by one-third of the freeholders, as is here admitted, there was no necessity under any language of the amendment, to get a majority of the freeholders, because that is the number required by the Constitution itself to bring about elections upon the question of creating municipal indebtedness. Article 2, § 13, prescribes as a condition precedent to the holding of a bond election in any incorporated city or town, a petition from a majority of the freeholders thereof. To say that this amendment was intended to make the same requirement applicable to a graded school district, would constitute a strained construction. The most that may be said for the amendment along this line, is that it creates a constitutional requirement that all school bond issues in this district shall be submitted to an election. The election has been had, and by an overwhelming majority, the electorate has authorized and directed the issuance of the bonds.

It is also suggested that the serial bonds proposed to be issued here do not conform to the Act of the General Assembly approved April 9, 1927 (35 St. at Large, p. 263). We fail to see the point of this objection. The entire purpose of the Act referred to was to require

in certain cases the bonds to be of a serial form. The bonds here proposed to be issued are in serial form, and we see no conflict with the Act referred to.

It is also said that the plat of Marlboro Graded School District is not a sufficient compliance with the Statute, and that no survey of any kind has ever been made of Marlboro Graded School District. There is no force in this objection. Marlboro Graded School District No. 10 is one of the special Graded School Districts of the State, and was created by an Act of the General Assembly, approved December 24, 1886 (19 St. at Large, p. 613). In this Act the territory of the district is clearly defined. It is admitted that there has been no subsequent change or alteration in any of the lines or territory of said school district. Furthermore, there was recorded a plat of the said school district in the office of the Clerk of Court on or about December 26, 1888. It is stated upon said plat that the district was "Surveyed December 26-31, 1888." The only object of requiring a survey is to get a tangible, authoritative ascertainment of the territory affected by the bonds. In this case the territory of the school district is fixed by law. Furthermore, the plat recorded many years ago represents the school district as it exists now. Clearly, there was no practical necessity for any additional survey or additional plat. *Black v. Stokes,* 139 S. C., 381; 137 S. E., 698.

This disposes of all objections made by the petitioner to the issuance of these bonds. The petition is dismissed, and the injunction dissolved.

Messrs. Justices Cothran, Blease, Stabler, and Carter, concur.