## 18470

Earle M. MOFFETT, a resident and taxpayer of the City of Greenville, South Carolina, individually and representing all other persons similarly situate, Appellant, v. David G. TRAXLER, as Mayor, James H. Simkins, John P. Mann, R. C. White, Jr., Gus Smith and William I. Bouton, constituting the City Council of the City of Greenville and Daniel R. McLeod, as Attorney General for the State of South Carolina, Respondents.

(147 S. E. (2d) 255)

Messrs. *Harry A. Chapman, Jr.,* and *Calhoun H. Turner,* of Greenville, *for Appellant,*

Messrs. *W. H. Arnold,* of Greenville, *Sinkler, Gibbs & Simons,* of Charleston, *Daniel R. McLeod, Attorney General,* and *Victor S. Evans, Assistant Attorney General,* of Columbia, *for Respondents,*

March 2, 1966.

LEWIS, Justice.

This action challenges the right of the defendants, the mayor and council of the City of Greenville, South Carolina, to proceed with the issuance of general obligation bonds of the city to defray the cost of various municipal improvements. The questions at issue concern the validity of a 1965 Act whereby the General Assembly undertook to ratify an amendment to Article II, Section 13, of the South Carolina Constitution; the necessity for subsequent legislative action to implement the said amendment, if it was validly ratified; and whether the provisions of Article II, Section 13, of the South Carolina Constitution, which restrict the voting in municipal bond elections to those electors who have paid all State, County, and municipal taxes for the previous year, constitute an unjust and unlawful discrimination as to poorer electors in violation of due process and equal protection of the laws.

Since there was no dispute as to the facts, the matter was submitted to the lower court for decision on the pleadings. This appeal is from an order of the lower court upholding the right of the defendants to issue the bonds in question.

On August 10, 1965, there were submitted to the qualified electors of the City of Greenville questions regarding the issuance of general obligation bonds of the city in the amount of $4,290,000.00. The election resulted favorably on all of the questions submitted.

Article II, Section 13, of the South Carolina Constitution, as originally adopted, provides that in authorizing a special

bond election for a municipality, "the General Assembly shall prescribe as a condition precedent to the holding of said election a petition from a majority of the freeholders of said city or town as shown by its tax books." No such petition was presented in this case. Instead, the defendants submitted the question of the issuance of such bonds to the qualified electors of the city, without a prior petition, on the strength of a purported amendment to Article II, Section 13, and its implementation by the provisions of Section 47-835 of the 1962 Code of Laws. The amendment in question is as follows:

"Provided, that the General Assembly need not prescribe any such petition of freeholders as a condition precedent to the holding of any such election in the City of Greenville where the proceeds of the bonds to be authorized are used for any corporate purpose of the City of Greenville. It is intended that the term 'City of Greenville' as used in this amendment shall mean the City of Greenville with corporate limits as now constituted or as hereafter altered following merger, annexation, or modification of the corporate limits."

The foregoing amendment was purportedly ratified by Act No. 65 of the 1965 Acts of the General Assembly. 54 Stat. 83. The title to this Act is as follows:

"An Act to ratify amendments to *Section 22, Article V,* of the Constitution of South Carolina, 1895, relating to juries in civil and criminal courts so as to provide that the civil petit jury of the County Court of Greenville County shall consist of twelve men, *and* to *Section 13, Article II,* of the Constitution of South Carolina, 1895, relating to special elections for bonding municipalities, so as to provide that, under certain conditions, the General Assembly need not prescribe a petition before holding such elections in the City of Greenville." (Emphasis added.)

The body of Act No. 65 undertook to ratify, in Section 1, an amendment to Article V, Section 22, of the Constitution and, in Section 2, an amendment to Article II, Section 13, both in accord with the quoted title.

The method used in amending the Constitution in this case was that set forth in Section I of Article XVI of the Constitution. Under it, the General Assembly submits any proposed amendment to the qualified electors for adoption or rejection. If approved by the electors, the amendment must then be ratified by the next General Assembly in order to become effective.

The first question for decision arises under plaintiff's contention that the amendment in question was never validly ratified by the General Assembly after its approval by the people. This argument is based on the fact that the ratifying act undertakes to ratify amendments to two separate and unrelated sections of the Constitution, which it is alleged was in violation of the following provisions of Article III, Section 17, of the Constitution:

"Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

The first question then to be decided is whether the foregoing provision of the Constitution (requiring every Act or resolution having the force of law to relate to but one subject which shall be expressed in the title) applies to the ratifying act in this case so as to render it invalid.

The only methods by which the Constitution may be amended, and the requirements to be met in each, are set forth in Article XVI thereof. This is an independent article, complete within itself. Sections 1 and 2 prescribe the steps and requirements necessary to effect an amendment under the method adopted in this case. While these sections provide that any amendment may be *proposed* by the General Assembly, *submitted* to the qualified electors and, if approved by the electors, then *ratified* by the next General Assembly, no where is any descriptive reference to the nature of the legislative vehicle to be used in either *proposing* or *ratifying an* amendment. In neither submitting nor ratifying a proposed amendment does Article XVI require the

legislature to act by the passage of an "Act or resolution" within the meaning of Article III, Section 17, here involved. The absence of such is significant and indicates an intent that the proposal and ratification of amendments to the Constitution by the legislature were not to be considered the exercise of ordinary legislative functions.

There is sound reason for the failure to require compliance on the part of the Legislature with Article III, Section 17, in performing the legislative functions incident to the adoption of an amendment to the Constitution.

The purpose of Article III, Section 17, is to prevent log rolling in the passage of legislation and to prevent surprise or fraud upon the legislature or the people. Ordinary legislation becomes effective as a law by the action of the General Assembly and approval by the Governor. The necessity for such a provision as Article III, Section 17, with respect to ordinary legislation, is apparent. For otherwise, the Members of the General Assembly and the people might be deprived of knowledge of proposed legislation until it was finally adopted.

The foregoing arguments do not apply to constitutional amendments. The prevention of surprise or fraud upon the legislature or the people is adequately covered in Article XVI. In fact, Article XVI affords more protection from surprise and fraud in the case of constitutional amendments than Article III, Section 17, provides in the passage of ordinary legislation. In the first place, Section 1 of Article XVI requires three steps to be taken in amending the Constitution: the proposal of the amendment by two-thirds of the Members of the General Assembly; the submission of the proposed amendment to the qualified electors of the State; and, if approved, its ratification by the next General Assembly. There is the further requirement that, in the consideration of the amendment by the General Assembly, it shall be "read three times, on three several days, in each House." Secondly, Section 2 of Article XVI provides: "If two or

more amendments shall be submitted at the same time, they shall be submitted in such manner that the electors shall vote for or against each of such amendments separately." Certainly, these provisions provide every safeguard against log rolling, surprise, and fraud in the adoption of constitutional amendments and no doubt explain the failure of the framers of the Constitution to require compliance with Article III, Section 17, as a requisite of the amendatory process.

Our decisions have recognized a difference between the provisions of Article XVI and other constitutional provisions on the exercise of legislative functions in proposing and adopting amendments to the Constitution.

We have consistently held that strict observance of every substantial requirement of the amendatory process as set forth in Article XVI, Sections 1 and 2, is essential to the validity of a proposed amendment. *Duncan v. Record Publishing Co.,* 145 S. C. 196, 143 S. E. 31; *Gebhardt v. McGinty,* 243 S. C.495, 134 S. E. (2d) 749.

On the other hand, the principle has been recognized that, in matters pertaining solely to legislative procedures in adopting an amendment to the Constitution, apart from the requirements of Article XVI, Sections 1 and 2, the legislature is not subject to the rules controlling ordinary legislative action. *Fleming v. Royall,* 145 S. C. 438, 143 S. E. 162; *Kalber v. Redfern,* 215 S. C. 224, 54 S. E. (2d) 791.

The foregoing rule is in accord with the general principle recognized in other jurisdictions that legislative action in adopting amendments to the Constitution is not the exercise of ordinary legislative functions, and is not subject to constitutional provisions regulating the introduction of ordinary legislative enactments. 82 C. J. S. Statutes § 215 a, and cases cited in Footnote 26.

We specifically held in the *Kalber* case, *supra*, that a resolution by the General Assembly proposing an amendment to the Constitution was not of the sort contemplated by Article IV, Section 23, so as to require its presentation to the Governor for his approval. It was also recognized in that case, although not directly in issue, that a resolution proposing an amendment to the Constitution was not such as to fall within the provisions of Article III, Section 17, relating to dual subjects.

We therefore hold that the provisions of the Constitution of this State (Article III, Section 17), requiring that every act or resolution having the force of law shall relate to but one subject which shall be expressed in the title, do not apply to legislative action in *proposing* and *ratifying* constitutional amendments.

In the instant case, the amendment was properly proposed and submitted by the General Assembly to the people who voted in favor of its adoption. Thereafter, the General Assembly ratified the amendment by legislation which included the ratification of an admittedly dissimilar amendment. However, the title of the ratifying legislation referred to both amendments, was complete, and in no way misleading. Admittedly, the body of the ratifying act correctly set forth both amendments referred to in the title. Under these circumstances, the amendment in question was properly adopted and the exceptions challenging its validity are overruled.

The next question concerns the contention of the plaintiff that, even though the amendment in question was validly adopted, still the bond election held by the defendants was illegal, in that the amendment was not self-executing and no effective legislative action has been taken to put it into effect. Consequently, since no petition was filed in this case, it is argued that the bond election was a nullity and should be set aside.

Article II, Section 13, originally required the General Assembly to prescribe, as a condition precedent to the hold-

ing of a special bond election in any municipality, "a petition from a majority of the freeholders of said city or town * * *." The Municipal Bond Act (Section 47-831, *et seq.*, 1962 Code of Laws) was first enacted in 1951 and is the statutory vehicle by which incorporated cities and towns are authorized by the General Assembly to issue general obligation bonds. Section 47-835 of the Municipal Bond Act provides, in accordance with Article II, Section 13, that a freeholder's petition must be first submitted to the council of a municipality before any such special bond election can be held. This section provides further, however, that a freeholder's petition is not required as a condition precedent to such an election when the particular municipality is "exempted in whole or in part" from such requirement "by reason of a special constitutional amendment." This section therefore, specifically excludes from its requirements any municipality that is exempted by a special constitutional amendment.

The present amendment was adopted in 1965 (subsequent to the enactment of the foregoing provisions of Section 47-835), and undertook to exempt the City of Greenville from the necessity of a freeholder's petition before holding a bond election. The pertinent portion of the amendment is as follows:

"Provided that the General Assembly *need not prescribe* any such petition of freeholders as a condition precedent to the holding of any such election in the City of Greenville * * *." (Emphasis added).

The defendants take the position, sustained by the lower court, that the prior enactment of the exemption contained in Section 47-835 was effective to implement, if such was necessary, the subsequently adopted constitutional amendment and to relieve the City of Greenville of the requirement that a freeholder's petition be filed as a prerequisite to a valid bond election. We agree.

The amendment conferred upon the General Assembly the power to exempt the City of Greenville from the necessity

of a freeholder's petition as a condition precedent to a bond election. Section 47-835 simply said in effect that, when the prohibition of the Constitution (Article II, Section 13) ceased to operate, a freeholder's petition would be unnecessary.

■ The general rule has been established that the General Assembly may enact a law to become effective on the happening of a certain contingency or future event. *Beaufort County v. Jasper County,* 220 S. C. 469, 68 S. E. (2d) 421; 16 C. J. S. Constitutional Law § 47.

The General Assembly had already provided the vehicle whereby the present amendment would become effective by including in Section 47-835 an automatic exemption to any incorporated city or town which is relieved, *by reason of a special constitutional amendment,* of the petition requirements of Article II, Section 13. In other words, the exemption enacted in Section 47-835 was made effective only upon the adoption of a constitutional amendment authorizing it.

■ The effect of the foregoing holding is that the present constitutional amendment, relating to the City of Greenville, is self-executing, when taken in connection with the prior statute (Section 47-835); and no further legislative action was required to relieve the City of Greenville of the necessity of a freeholder's petition as a condition precedent to the holding of the bond election here under attack. Such construction finds support in our decisions: *McColl v. Marlboro Graded School District No. 10,* 143 S. C. 120, 141 S. E. 265; *Brice v. McDow,* 116 S. C. 324, 108 S. E. 84.

The plaintiff contends however that, notwithstanding the prior enactment of Section 47-835, the General Assembly passed implementing legislation following the adoption in 1961 of a similarly worded special constitutional amendment relative to the City of Myrtle Beach, Section 47-835.1; and that such action constituted a legislative interpretation of the amendment as requiring subsequent legislation to make

it effective. It is argued that such legislative construction should be adopted by the Court.

While it is proper, in seeking the legislative intent, to consider cognate legislation, such is not conclusive, *Abell v. Bell,* 229 S. C. 1, 91 S. E. (2d) 548; and in view of other circumstances that may have influenced the legislative action in the single instance of the City of Myrtle Beach it is not persuasive in this case.

The last question for determination is whether the provisions of Article II, Section 13, of the South Carolina Constitution, which restrict voting in special municipal bond elections to those electors who have paid all state, county and municipal taxes for the previous year, constitute an unjust and unlawful discrimination as to the poorer electors in violation of the due process and equal protection clauses of the Constitution.

Article II, Section 13, limits those who are qualified to vote in any special municipal bond election to electors "who have paid all taxes, State, County and municipal, for the previous year." This provision does not involve the qualifications for voting in the election of public officials, but deals solely with such qualifications in an election to determine whether or not the municipality involved shall incur bonded debt.

The validity of State Constitutional provisions requiring the payment of taxes as a condition of the privilege of voting have been upheld. *Breedlove v. Suttles,* 302 U. S. 277, 58 S. Ct. 205, 82 L. Ed. 252. Of course, since the adoption of the Twenty-Fourth Amendment to the United States Constitution, such cannot be made a requirement in any election of Federal officials. However, as stated in *Forssenius v. Harman,* D. C., 235 F. Supp. 66, 71: "Indeed, the very fact that the Congress deemed a constitutional amendment necessary to abolish it in Federal elections demonstrates that such a tax is not in itself unconstitutional."

The contention that the present requirement is unconstitutional because of alleged discrimination against poorer electors cannot be sustained. An indigent person, who is subject to no tax and is otherwise a qualified elector, is not prevented from voting in the bond election; and, therefore, could not be discriminated against by the requirement that taxes for the previous year be paid. Such requirement applies only to those electors who are required to pay state, county or municipal taxes; and all in that class are placed on the same basis.

Affirmed.

Moss, Bussey and Brailsford, JJ., concur.