#### FLEMING v. ROYALL *ET AL.*
#### MORRISON v. MORRISON *ET AL.*

(143 S. E., 162)

1. STATUTES—THAT JOINT RESOLUTION AMENDED DIFFERENT SECTIONS OF CONSTITUTION WAS NOT MATERIAL, WHERE SECTIONS RELATED TO SAME SUBJECT (CONST., ART. 3, § 17).—As regards violation of Const., Art. 3, § 17, requiring every Act or Resolution to have but one subject, which shall be expressed in the title, the fact that Joint Resolution relating to but one subject, viz., issuance of township bonds, amended two different sections of the Constitution, is not material, in view of the fact that the two sections amended related to the same subject.

2. STATUTES—JOINT RESOLUTION AMENDING CONSTITUTIONAL PROVISIONS HELD NOT INVALID FOR FAILURE TO EXPRESS SUBJECT-MATTER IN TITLE (CONST., ART. 10, §§ 5, 6; CONST. 1895, ART. 3, § 17).—Joint Resolution for purpose of amending Const., Art. 10, § 5, relating to bonded debt, and Section 6, relating to the purpose for which the General Assembly may authorize a township to issue bonds, *held* not invalid under Const. 1895, Art. 3, § 17, for failure to express subject-matter in title, since title would have been sufficient if it had simply stated that Resolution was for purpose of amending Sections 5 and 6 without words "relating to limit of bonded debt of township."

3. STATUTES—COURTS WILL UPHOLD CONSTITUTIONALITY OF ACT OR JOINT RESOLUTION, BODY OF WHICH IS GERMANE TO SUBJECT EXPRESSED IN TITLE (CONST. 1895, ART. 3, § 17).—Whenever the body of an Act or Joint Resolution is germane to the subject expressed in the title, Courts will uphold its constitutionality, under Const. 1895, Art. 3, § 17, requiring every Act or Resolution having the force of law to relate to but one subject expressed in the title.

4. CONSTITUTIONAL LAW—BALLOTS IN ELECTION ON PROPOSED AMENDMENT OF CONSTITUTIONAL SECTIONS HELD SUFFICIENT, THOUGH NO SPECIFIC MENTION WAS MADE OF PURPOSE OF AMENDMENT (CONST., ART 10, §§ 5, 6).—Ballots used in election on proposed amendment to Const., Art. 10, §§ 5 and 6, referring to Section 6, but without

specific mention, showing that said proposal was for the purpose of voting bonds in aid of a railroad, *held* sufficient, since all that would have been necessary was a reference to the fact that Resolution was for purpose of amending specified sections of the Constitution.

5. CONSTITUTIONAL LAW—ENTRY OF ENTIRE BODY OF JOINT RESOLUTION PROPOSING CONSTITUTIONAL AMENDMENT IN HOUSE JOURNAL AT SECOND AND THIRD READINGS HELD SUFFICIENT (CONST. 1895, ART. 16, § 1).—Requirement of Const. 1895, Art. 16, § 1, that proposed constitutional amendment shall be entered on the Journal, *held* fully carried out, when entire body of Joint Resolution proposing constitutional amendment was entered in full on Journal of House at the time of second and third readings, though statement of title therein was incomplete, in that it failed to refer to one section of the Constitution proposed to be amended.

6. STATUTES—JOINT RESOLUTION, DULY RATIFIED, AND SIGNED WITH GREAT SEAL OF STATE IMPRESSED THEREON, CANNOT BE IMPEACHED BY JOURNALS OF TWO HOUSES.—Where Joint Resolution has been duly ratified, signed by the President of the Senate and Speaker of the House, approved by the Governor, with the great seal of the State impressed thereon, Court cannot inquire as to what the Journals of the two Houses may show as to the successive steps taken in passage thereof, and Journals are inadmissible to impeach validity thereof.

7. TOWNS—TOWNSHIPS OF CHRIST CHURCH PARISH AND ST. JAMES SANTEE OF CHARLESTON COUNTY HELD BODIES POLITIC, THOUGH CREATED AS PARISHES, AND AUTHORIZED TO ISSUE BONDS (CONST. 1895, ART. 7, § 11).—Under Const. 1895, Art. 7, § 11, townships of Christ Church Parish and St. James Santee, Charleston County, constitute bodies politic and corporate, with authority to issue bonds pursuant to Joint Resolution authorizing their issuance, since, though such townships were originally created as parishes, they have been recognized for years past as townships duly and properly laid out, and functioning as such under the Constitution and laws of the State.

8. TOWNS—GENERAL ASSEMBLY PROPERLY AUTHORIZED TOWNSHIP BOND COMMISSIONS TO EITHER SELL OR DELIVER TO RAILROAD BONDS ISSUED PURSUANT TO AUTHORITY OF JOINT RESOLUTION FOR AID IN CONSTRUCTING RAILROAD.—Under Joint Resolution amending Constitution so as to authorize townships to issue bonds for purpose of aiding construction of railroad, and authorizing the General Assembly to provide limitations and restrictions under which bonds might be sold and delivered, General Assembly properly provided that township bond commissions might either sell bonds and pay

over proceeds or deliver bonds in kind, and make a contract with railroad which should constitute a valid binding agreement, particularly where cost of construction of railroad exceeded amount of bond issue.

Before GRIMBALL, J., Charleston, February, 1928. Affirmed.

Separate actions by Frank P. Fleming against R. V. Royall and others, members of Christ Church Parish Commission, and by R. L. Morrison against J. B. Morrison and others, members of St. James Santee Commission of Charleston County, which two cases were tried together by agreement. Judgments for defendants, and plaintiffs appeal.

The decree of the Circuit Judge directed to be reported was as follows:

The two cases above-entitled were, by agreement of counsel, heard before me, and it was agreed that one decree should be rendered covering all points at issue raised by the petitions and answers filed herein. A hearing was first had upon the original petitions and answers filed and a tentative decree was reached, but, upon request of counsel for petitioners, the decree was held in abeyance pending filing of the amended petitions. This decree is intended to, and does, cover each and every issue made by the original petitions and answers filed herein and the issues raised by the amended petitions and amended answers filed in these cases; this being the final decree in this cause.

The petition in the first proceeding is by a taxpayer and freeholder in the township of Christ Church Parish, Charleston County, S. C., seeking to enjoin and restrain the defendants as members of Christ Church Parish Commission, a body authorized and empowered to act under and pursuant to the terms of two certain acts of the General Assembly of South Carolina, one approved the 8th day of February, A. D. 1923 (33 St. at Large, p. 564), and the other approved the 19th day of March, A. D. 1925 (34 St. at Large, p. 662);

the latter being an amendatory act, from issuing or delivering bonds of said township as authorized by the two acts mentioned.

In the second proceeding above mentioned, the suit is by a taxpayer and freeholder of St. James Santee township in the County of Charleston against the members of St. James Santee Commission, a body authorized and empowered to act under and pursuant to the terms of a certain act of the General Assembly of South Carolina, approved the 25th day of March, 1927 (35 St. at Large, p. 767), seeking in said proceeding to enjoin and restrain the said commission from issuing or delivering any bonds of said township under or by virtue of the terms of the said last mentioned act.

The primary questions involved in both cases are the same, and will be considered together. There is, however, an additional objection set forth in the petition involving the bonds of the township of Christ Church Parish which I will consider separately in this decree.

The Joint Resolutions referred to in both cases cover proposed amendments to Sections 5 and 6 of Article 10 of the Constitution of 1895, but the plaintiffs in the cases above-entitled allege that the commissions in each of these townships have no right to act under the provisions of the acts of the General Assembly referred to above, because said Joint Resolutions were not passed in accordance with the requirements of Section 17 of Article 3 of the Constitution of 1895, and therefore, even though such amendments were voted on by the people of the State and duly passed, and even though the bonds proposed to be issued pursuant to the terms of the Acts of the General Assembly hereinabove mentioned have been passed by an election held in said townships, by almost a unanimous vote, that all proceedings and elections are void because of the alleged failure of said original Joint Resolutions to be passed by the General Assembly in accordance with Section 17 of Article 3 of the Constitution of 1895; other objections are also set up in the petitions herein.

In the petition regarding bonds of Christ Church Township, and from the statutes of South Carolina as published, it appears that the Joint Resolution in reference to the bonds of the Township of Christ Church Parish was passed by the General Assembly of South Carolina in the year 1922, and approved on March 11, 1922 (32 St. at Large, p. 1344). In the St. James Santee Township case it would appear from the evidence presented and the statutes of South Carolina that the Joint Resolution in question was passed by the General Assembly of South Carolina in 1925 and approved the 4th day of April, A. D. 1925 (34 St. at Large, p. 613).

. As alleged objections to the proper passage of such Joint Resolutions, the complaint in both cases sets forth in substance the following allegations:

(a) The form of said Joint Resolution fails to comply with the requirement of Section 17 of Article 3 of the Constitution that "every Act or Resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." The said Joint Resolution relates to two subjects, in that it attempts, firstly, to amend Section 5 of Article 10, of the Constitution, which limits the amount of the bonded debt of townships, so as to make such limitation inapplicable to this bond issue, and attempts, secondly, to amend Section 6 of Article 10 of the Constitution, which prohibits the issuance of township bonds or the levying of township taxes, except for certain purposes, so as to authorize these bonds to be issued for a purpose prohibited by Section 6, to wit, the erection and maintenance of a railroad. Moreover, the subject of the Joint Resolution is not fully expressed in the title of the Resolution. The title described the Joint Resolution as a Resolution to amend certain sections of the Constitution "relating to the limit of the bonded debt of townships," whereas one of the sections sought to be amended, namely, Section 6 of Article 10, does not relate to the limit of bonded debt of townships, but relates to the purposes for which township bonds may be issued and township taxes

levied; so that any one reading the title of the Joint Resolution would suppose that the Resolution related only to the limit placed by the Constitution upon the amount of the bonded debt of townships. The title of said Joint Resolution is therefore misleading and deceptive, as well as incomplete.

(b) The form of ballot set forth in said Joint Resolution approved the 4th day of April, A. D. 1925, and hereinbefore fully set out, is also misleading and deceptive, in that it described the said Joint Resolution as a Resolution to amend certain sections of the Constitution relating to the limit of bonded indebtedness of townships, and failed to specify that one of the purposes of the proposed amendment was to authorize the issuance of township bonds for the erection and maintenance of a railroad.

The respondents by their separate answers admit that they are members of Christ Church Parish Commission and St. James Santee Commission, respectively, and acting as such under commissions issued by the Governor of the State of South Carolina, under and pursuant to the terms of the Acts hereinbefore mentioned, and allege that the Joint Resolutions hereinabove mentioned were duly passed by the General Assembly of the State of South Carolina in the form and manner set forth in said petitions, but that they specifically deny each and every allegation of the said petitions which seek to declare the Joint Resolutions null and void; and would further show to the Court that they are advised and believe that the Joint Resolutions were passed in accordance with the requirements of the Constitution of this State, and that the bond elections in the several parishes were duly authorized by Acts of the General Assembly, and that the said elections were overwhelmingly passed by the qualified electors of the respective townships. All material allegations of the complaints are denied.

The respondents further show to the Court that a railroad is much needed through these townships, and that only by the aid and help to be rendered by the said townships can

such railroad facilities be obtained, and further that these respondents have entered into a contract for the purpose of constructing the said railroad.

After full hearing, I am convinced that none of the objections raised by the plaintiff in each of the cases mentioned can be sustained, and the complaints must therefore be dismissed.

Section 17 of Article 3 of the Constitution of 1895 provides: "Every Act or Resolution having the force of law shall relate to but to one subject, and that shall be expressed in the title."

The question of whether certain Acts passed by the General Assembly of South Carolina refer to more than one subject than is expressed in the title thereof has been before the Supreme Court of this State on many occasions, and, as will be seen by the citations hereinafter mentioned, that Court has given a broad and liberal construction to said Section so as not to embarrass or defeat legislation, and thereby unnecessarily compelling separate enactments on every phase of the general subject.

In Cooley's Constitutional Limitations (7th Ed.), p. 205, the following is found: "The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate Act relating to that alone, would not only be unreasonable, but would actually render legislation impossible."

Further: "There has been a general disposition to construe the constitutional provisions liberally, rather than to embarrass legislation by a construction whose strictness is unnessessary to the accomplishment of the beneficial purposes for which it has been adopted."

The Joint Resolutions under consideration relate to but one subject, namely, the issuance of township bonds. The fact that each Joint Resolution

amended two different Sections of the Constitution is not
material, in view of the fact that the two Sections amended
related to the same subject.

The objection raised by the petitioners to the two
Joint Resolutions in question is that the subject-
matter of such Joint Resolutions is not properly ex-
pressed in the title thereof, in that the titles propose amend-
ments to Sections 5 and 6 of Article 10 of the Constitution
of 1895 relating to the limit of bonded debt of townships,
whereas only Section 5 relates to the bonded debt limit, and
Section 6 relates to the purpose for which the General
Assembly may authorize a township to issue bonds.
Petitioners allege that, as the purpose of Section 6 of Article
10 of the Constitution as sought to be amended was to
authorize the two townships in question to issue bonds for
purposes other than those expressly permitted by said Section
6, the titles of the Resolutions should have so stated. But
from reference to said titles of the two Joint Resolutions
in question no reference is made in the same to the fact that
the bonds in question are to be issued by said townships in
aid of railroad, and therefore such titles are incomplete, and
the Joint Resolutions were not passed in accordance with
the requirements of the Constitution, § 17, Art. 3, which
prescribes that the purpose of each Act of the General As-
sembly as set forth in the body of a bill shall be properly set
forth in the title thereof.

The plaintiffs have cited no authority in this State to sus-
tain their contentions, and, in my opinion, there is ample
authority from the decisions of our Court, as hereinafter
referred to, to hold valid the two Joint Resolutions in
question.

Our Court has said in several cases that a broad and
liberal construction must be given to constitutional
questions that may be raised affecting the passage of
Acts and Joint Resolutions, and more especially in reference
to the manner in which the title sets forth the purpose and

intent of legislative mind; and, whenever the body of the Act or Joint Resolution is germane to the subject expressed in the title, that the Courts will uphold its constitutionality.

The title, of the Joint Resolutions would have been complete and would have fully expressed the subject matter thereof if it had simply been stated therein that the same was a Joint Resolution to amend Sections 5 and 6 of Article 10 of the Constitution, and had not contained the words "relating to the limit of the bonded debt of townships." The addition of those words did not make the title either incomplete or misleading. Both of the sections of the Constitution amended by the two Joint Resolutions prescribe limitations upon bonded indebtedness. One prescribes a limitation upon the amount of the debt and the other prescribes a limitation upon the purpose of the debt. Although the words "relating to the limit of the bonded debt of townships," if they stood alone, might well be taken to refer exclusively to a limit upon the amount of bonded debt, any one familiar with Section 6 of Article 10 of the Constitution would see at a glance that they do not, as used in these titles, refer exclusively to a limit upon the amount of bonded indebtedness, because Section 6 does not prescribe any limit upon the amount of bonded indebtedness, but prescribes a different kind of limitation.

In the case of *Charleston v. Oliver,* 16 S. C., p. 56, it is said: "There has been, and ought to be, a general disposition to give a liberal construction to constitutional provisions like this now under consideration, rather than to embarrass legislation by an unnecessary strictness of construction."

This principle is expressed in the case of *Aycock-Little Co. v. Railway,* 76 S. C., 331; 57 S. E., 27, as follows: "In questions arising under this Section of the Constitution the Court must give a broad and liberal construction so as not to embarrass, clog or defeat legislation, unnecessarily compelling separate enactments on every phase, qualification, application, or matter promotive, of a general subject."

One Court has expressly stated that the details of legislation need not be expressed in the title. See *State v. O'Day,* 74 S. C., 448; 54 S. E., 607, as follows: "In Cooley's Constitutional Limitations, 143, 144, which is quoted with approval in *Charleston v. Oliver,* 16 S. C., 47, 56, the purpose of the constitutional provision in question is said to be: '1st, to prevent hodge-podge or log-rolling legislation; 2nd, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the title gave no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and 3rd, to fairly apprize the people through such publication of legislative proceedings as is usually made of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon by petition or otherwise, if they shall so desire.' This provision of the Constitution should be so enforced as to guard against the evils intended to be remedied, but at the same time legislation should not be crippled or embarrassed by an unnecessary strictness of construction. *Charleston v. Oliver,* 16 S. C., 56. Hence the Courts generally agree that the details of legislation need not be expressed in the title and that the mandate of the Constituion is complied with if the title states the general subject of legislation and the provisions in the body of the act are germane thereto as means to accomplish the object expressed in the title. *Connor v. Railroad,* 23 S. C., 427. *Riley v. Union Station,* 71 S. C., 486 [51 S. E., 485; 110 Am. St. Rep., 579]. *Bobel v. People* [173 Ill. 19; 50 N. E., 322], 64 Am. St. Rep., 64, and note at page 72."

To the same effect are the following cases: *Connor v. Green Pond, etc., Railroad Co.,* 23 S. C., 427. *Floyd v. Perrin,* 30 S. C., 7; 8 S. E., 14; 2 L. R. A., 242. *Ex parte Bacot,* 36 S. C., 125; 15 S. E., 204; 16 L. R. A., 586. *State ex rel. Hoover v. Chester,* 39 S. C., 307; 17 S. E., 752. *Riley v. Charleston Union Station Co.,* 71 S. C., 457; 51 S. E., 485; 110 Am. St. Rep., 579. *State ex rel. Coleman*

*v. Chester,* 18 S. C., 466.   *Buist v. City Council,* 77 S. C.,
260; 57 S. E., 862.   *Southern Power Co., v. Walker,* 89 S.
C., 84; 71 S. E., 356.   *Dove v. Kirkland,* 92 S. C., 313; 75.
S. E., 503.   *Heinitsh v. Floyd, Mayor,* 130 S. C., 434; 126
S. E., 336.

This question is clearly raised in the recent case of *Heinitsh
v. Floyd, Mayor, et al.,* 130 S. C., p. 437; 126 S. E., 337,
where the Court holds that a "proposed  *  *  *  amendment
will not be held invalid by reason of its submission under
an incomplete title."

The Court further states in the *Heinitsh case* that a Joint
Resolution proposing a constitutional amendment need not
have a title.    This is what is termed a "submitting Reso-
lution," and the Court further says in the *Heinitsh case,* on
page 438 (126 S. E., 337), as follows:  "While the Legis-
lature, in proposing a constitutional amendment is, in many
respects, not subject to the rules controlling ordinary legis-
lative action, still, the fundamental purpose in construing an
amendment is to ascertain and give effect to the intent of
its framers and of the people who adopted it; and the Court
must keep in mind the object sought to be acomplished, and
the evils sought to be remedied.    12 C. J., 700."

Thus it will be noted that the usual limitations and restric-
tions are not enjoined upon the legislative body in the pro-
posing of constitutional amendments, and the intent and pur-
pose of such amendments must be given effect to by the Court
and by the people who adopted it.

From the foregoing authorities I am convinced that the
titles of the two Joint Resolutions in question express the
purpose sought to be obtained as found in the body of these
Joint Resolutions, and therefore am convinced that the Joint
Resolutions herein referred to are not subject to this objec-
tion interposed by the petitioners.

The second objection raised by the petitioners is that
the form of ballot used in the election did not fully
apprise the qualified electors voting in said election

of the purpose of said proposed amendment, it being admitted that the form of ballot refers to Section 6 of Article 10 of the Constitution, yet no specific mention is made on said form of ballot showing that the said proposal is for the purpose of voting bonds in aid of a railroad as prohibited by Section 6 of Article 10 of the Constitution of 1895.

This objection, as taken by the plaintiffs in both cases now being heard, cannot be sustained, and authorities have not been cited by the plaintiffs which would warrant me in coming to the conclusion prayed for. To the contrary, authorities have been cited which convince me that the ballots were in proper and legal form.

In Volume 12 of C. J., p. 690, it is said: "The ballot need not contain the amendment in full"—citing *Cooney v. Foote,* 142 Ga., 647; 83 S. E., 537 Ann. Cas., 1916-B, 1001; and in the case of *State v. Herried,* 10 S. D., 109; 72 N. W., 93, it is said: "It is not necessary to set forth at length in the ballot the full terms of the amendment, if the notice gives sufficient information to the electors."

The reason for this rule is stated to be as follows, and is taken from *Cooney v. Foote, supra:* "It was never contemplated that the entire proposed amendment should be printed on the ballot. It was within legislative discretion to adopt some formula by which the voter would express his assent or dissent to the proposed amendment. The formula prescribed by the Legislature was not intended for the purpose of informing the voter as to the full contents of the amendment. On the contrary, the formula was intended as the declaration by the voter of his approval or disapproval of the amendment. * * *"

In the case of *Lucas v. Barringer,* 120 S. C., 68; 112 S. E., 746, the form of ballot was as follows: "Amendment to Section 7, Article 8, and Section 5 of Article 10 of the Constitution [31 St. at Large, p. 90], exempting Rock Hill" and Florence "from the foregoing provisions relating to municipal bonded indebtedness—Yes."

No question was raised in reference to this ballot, and certainly the proposed ballots in the pending matters before the Court more clearly set forth the purposes of the elections to be held thereunder.

The case of *Heinitsh v. Floyd, Mayor,* 130 S. C., 437; 126 S. E., 336, has been called to the attention of the Court as authority to substantiate the contention of petitioners regarding the form of ballot prescribed in the two Joint Resolutions in question.     I cannot adopt the contention of the petitioners.     I find no constitutional provision prescribing or requiring the form in which a ballot should be made up in a proposal amending the Constitution of the State.     The *Heinitsh case* covered an entirely different situation.     There, it was alleged and shown that the ballot and the title really deceived the voters, and the Court says: "In this case, in so far as the proviso is concerned, the title and the ballots were deceptive."

The Court further states, on page 437 (126 S. E., 337), that "it [the amendment] must be adopted by the vote of the people in the free and fair exercise of their right of suffrage."     Undoubtedly the form of ballot used and prescribed in the two Joint Resolutions in question fairly and clearly gave the voters a knowledge of the purpose for which they were casting a ballot, and I am satisfied that a free and fair exercise of their right of suffrage was had.

What I have hereinbefore found and held concerning the title of Joint Resolutions is fully applicable to the issue concerning the ballots as set forth in the submitting Resolutions, for, in my opinion, the form of ballots would have been complete, and would have fully expressed the purpose for which the election was being held, if they had simply contained reference to the fact that they were to amend Sections 5 and 6 of Article 10 of the Constitution, and had not contained the words "relating to the limit of the bonded debt of townships."     The addition of those words did not make the form of ballot either incomplete or misleading.     Both of

the Sections of the Constitution proposed to be amended by the Joint Resolutions in question prescribe limitations upon bonded indebtedness. One prescribes a limitation upon the amount of the debt, and the other prescribes a limitation upon the purpose of the debt. Although the words "relating to the limit of the bonded debt of townships," if they stood alone, might well be taken to refer exclusively to a limit upon the amount of the bonded debt, any one familiar with Section 6 of Article 10 of the Constitution would see at a glance that they do not, as used in this form of ballot, refer exclusively to a limit upon the amount of bonded indebtedness, because Section 6 does not prescribe any limit upon the amount of bonded indebtedness, but prescribes a different kind of limitation.

As heretofore stated, there being no constitutional provision prescribing the form of ballot, it was entirely a matter for the General Assembly to set forth such form of ballot in the submitting Resolutions so that the electorate would be reasonably apprized of the purposes thereof when reading and casting their ballots. This has unquestionably been done in the two Joint Resolutions in question.

I am therefore of opinion that the ballots as set forth in the Joint Resolutions in question were in legal form, and proper and sufficient notice was given thereby to the qualified electors as to the purpose, or purposes, of said elections.

This disposes of the two identical questions raised in the two cases above entitled. However, in the case of *Fleming v. Royall et al. members of Christ Church Parish Commission,* the additional objection is interposed that it appears from the record of the Journals of the House of Representatives that the Joint Resolution concerning this township, which was approved on the 11th day of March, 1922, that the said Joint Resolution, while being introduced in the Senate and passed by that body in due form, as required by the Constitution of South Carolina, was read the first time

in the said House of Representatives on the 10th day of February, 1922, the second time on March 8, 1922, and the third time on the 9th day of March, 1922; that the said resolution was not entered in full in the Journal of the said House at any of its readings, in that the title thereof was set forth in an incomplete manner on each of said three readings, although it appears that the entire body of said Joint Resolution was fully set forth in the Journal of the House at the times of its second and third readings on March 8 and 9, 1922.

In the *Christ Church Township case,* Subdivision C of Paragraph .6 alleges in substance that "in the Journal for each of said dates the title of said Joint Resolution was set forth as follows:   H. 1188 (S. 916—Senator Young): A Joint Resolution to Amend Section 5 of Article 10 of the Constitution Relating to the Limit of the Bonded Debt of Townships, etc."

The said statement of the title was incomplete, in that it failed to refer to Section 6 of Article 10 of the Constitution. In the Journal for March 8 and March 9, 1922, the Joint Resolution, with the yeas and nays taken thereon, was entered fully and correctly, except that the title as so entered failed to refer to Section 6 of Article 10 of the Constitution. The title of the Joint Resolution was not entered correctly anywhere in the Journal of the House of Representatives for 1922, except in the Journal of March 10, 1922, where it appears, not with the yeas and nays taken thereon, but only in a record of the fact that the Joint Resolution was duly ratified on March 10, 1922. This petitioner submits to the Court that, in view of the foregoing facts, the said Joint Resolution was not entered on the Journals in accordance with Section 1 of Article 16 of the Constitution, which requires that a proposed constitutional amendment "shall be entered on the Journals respectively, with the yeas and nays taken thereon."

These allegations and contentions of the petitioner in the *Christ Church Township case* connot be sustained. The objection here is raised in view of the provisions of Section 1 of Article 16 of the Constitution of 1895. A reading of this Section of the Constitution shows that it was intended only that the proposed constitutional amendment should be entered on the Journal. Nothing is found in this Section requiring that the title of a Joint Resolution proposing to amend the Constitution be entered on the Journals of the two houses, but merely that the proposed constitutional amendment be so entered. This requirement of the Constitution was fully carried out when the entire body of the Joint Resolution proposing the constitutional amendment was entered in full on the Journal of the House on March 8, and March 9, 1922, at the times of its second and third readings in that body. As stated, there is no requirement in Section 1 of Article 16 of the Constitution of 1895 prescribing that a Joint Resolution shall be entered in full on the Journal, but only that the proposed constitutional amendment shall be entered on the Journal of the House, or Senate, and this has been done on two separate occasions while this Resolution was being considered. Another conclusion to be reached is, as denying the relief claimed by the petitioner in the *Christ Church Township Case,* that the title of this Joint Resolution was set forth in the Journal in full and complete form on the date of the ratification of the same, which was had on March 10, 1922. Therefore, the entry of the title in full on the Journal of the House on the date of ratification of the Act, coupled with the previous entry of the body of the Joint Resolution in full at the time of the second and third readings, is a sufficient compliance with the constitutional requirement.

From the certified copies of the Journals of the Senate and the House of Representatives for the regular sessions beginning Tuesday, January 10, 1922, and ending Friday, March 25, 1927, duly certified to

by the clerk of the Senate and by the clerk of the House of Representatives on the 6th day of October, 1927, it appears that the Joint Resolutions under consideration were duly read three times, and entered at least once on the respective Journals, and an aye and nay vote was taken thereon, and that the same were ratified by the said Senate and House, and, it further appearing from the evidence before me that the same were signed by the President of the Senate and Speaker of the House of Representatives and approved by the Governor, and the same were certified to by the secretary of State, that under the decisions of this Court it appears that, if the Joint Resolution had been duly ratified, signed by the President of the Senate and Speaker of the House, approved by the Governor, with the great seal of the State impressed thereon, this Court cannot inquire as to what the Journals of the two houses may show as to the successive steps that may have been taken in the passage of the Joint Resolution. *Stevenson v. Carrison, Mayor, et al.,* 122 S. C., 212; 115 S. E., 251.

In the case of *Lucas v. Barringer, Mayor,* 120 S. C., 68; 112 S. E., 746, it is said: "Article 16, § 1, of the Constitution does not require more than one entry on each Journal."

This case also holds: "Where a Joint Resolution had been entered once on both the House and Senate Journal with aye and nay vote, this entry fulfilled requirement of Const. Art. 16, § 1, and a certificate of the Secretary of State attached to the copy of the Resolution certifying that it had been read three times on three several days in each house, duly ratified and signed by the President of the Senate and Speaker of the House, approved by the Governor and the great seal impressed, was evidence of the passage of the Act, and the introduction of the whole Senate and House Journals was inadmissible to show that the Joint Resolution had not received three readings, and that the entries were not in accordance with Article 16, § 1."

To the same effect are the cases of *Graham v. Ervin,* 114
S. C., 419; 103 S. E., 750. *State v. Tollison,* 100 S. C.,
165; 84 S. E., 819. *State ex rel. Hoover v. Chester,* 39
S. C., 307; 17 S. E., 752.

This contention of the petitioners in reference to the bonds
of Christ Church Township cannot therefore be sustained;
therefore in accordance with the principles announced in
the foregoing cases I hold that the Journals of the House
of Representatives and Senate are not admissible to impeach
the validity of the Joint Resolution herein referred to, and
that, the same having been duly signed by the Speaker of
the House of Representatives and the President of the
Senate, and duly approved by the Governor, and the great
seal of the State impressed thereon, the same is a valid and
legal Act or Joint Resolution of the General Assembly of
this State, and this Court cannot inquire into the propriety
or correctness of the several successive steps taken by these
houses during the process of its enactment, and the above
objections are therefore overruled.

In paragraph 7 of the petition in both cases before me
another question is raised by petitioners, and thereabout the
following allegation in substance is found: That the said
constitutional amendments and the said Acts subsequent
thereto authorizing elections to be held in both of said town-
ships and all Acts and proceedings taken thereunder are in-
operative and void, for the reason that, as this petitioner
is informed and believes, there are no such townships as
those referred to in the said constitutional amendments and
in the Acts authorizing the elections to be held in said
townships.

From the foregoing, and from the discussion had be-
fore me, the petitioners are attempting to show that
the townships of Christ Church Parish and St. James
Santee Township, in Charleston County, are not townships,
merely because they have been referred to at times as
parishes and therefore, as parishes, these political subdivi-

sions could not issue bonds, and the constitutional amendments and the Acts passed pursuant thereto would be inoperative as affecting such parishes. This allegation and the issue made thereby cannot be sustained by the Court.

From the statutes referred to by counsel in the arguments before me, it appears that the territories covering what is now the townships of Christ Church Parish and St. James Santee were created as parishes by a certain Act of the Colonial Government, ratified and approved in open assembly on the 18th day of December, 1708. See Statutes of South Carolina, Vol. 2, pp. 328–330.

In reference to the township of Christ Church Parish, the Joint Resolution approved the 11th day of March, A. D. 1922, and set forth in that petition, expressly refers to this political subdivision as "the township of Christ Church Parish in Charleston County."

The same thing applies to the Joint Resolution in reference to the township of St. James Santee, which Resolution was approved April 4, A. D. 1925 (34 St. at Large, p. 613, § 1), where the language used is: "Provided, further, that the limitations imposed by these Sections shall not apply to the St. James Santee Township in Charleston County."

In both of these Joint Resolutions, it is interesting to note that the boundaries as set forth therein are almost identical with the territory covered in the Act of the Colonial Government mentioned above. Statutes of South Carolina, Vol. 2, pp. 328–330.

It further appears that the Acts of the General Assembly hereinbefore referred to, authorizing an election on the question of issuing bonds by the township of Christ Church Parish and St. James Santee township in Charleston County, clearly recognize and refer to such political subdivisions as townships.

If this be not sufficient authority, I find that under Section 1305, Volume 3, Code of Laws of South Carolina 1922, it is declared that the County Board of Commissioners of

Charleston County shall be composed of the County Super-
visor, "and the chairman of the township boards of com-
missioners in the several townships appointed by the Gover-
nor," thus recognizing that the entire territory of Charleston
County is divided into townships.

See in this connection *Carolina Gro. Co. v. Burnet, County
Treas.*, 61 S. C., 205; 39 S. E., 381; 58 L. R. A., 687.

Section 1307, Volume 3, Code of Laws of South Carolina
1922, further provides that in Charleston County the Gov-
ernor shall appoint "three discreet qualified electors in each
township, who shall be known as the board of township
commissioners," thus clearly providing a system of town-
ship government in accordance with Section 11 of Article
7 of the Constitution of 1895.

Section 471, Volume 3, Code of Laws of South Carolina
1922, further provides that in Charleston County the duties
performed in other Counties by township boards of assessors
shall be performed by "township boards of commissioners."

Another reference in the Acts of the General Assembly
of this State to the townships in question is found in the Acts
of 1912, p. 566, being an amendment of an Act of 1908,
which Act is only applicable to Charleston County, and dis-
tinctly provides that; "in addition to the policemen hereinbe-
fore provided for, one mounted policeman shall be appointed
by the police commission in any or all of the remaining town-
ships of said County, to wit: John's Island, James' Island,
Wadmalaw, Edisto, Christ Church and Santee, and two
mounted policemen in St. Paul's.   *   *   *"

In the Acts of the General Assembly of 1913, p. 221,
where taxes are levied in Charleston County for the year
1913, and a provision is made for the increase in salaries of
rural policemen, it is provided:   "*   *   *   In the following
townships of said County, to wit John's Island, James' Is-
land, Wadmalaw, Edisto, Christ Church, Santee and St.
Paul's   *   *   *"

· It will be noted, therefore, from the above citations that the township of Christ Church Parish and St. James Santee Township, in Charleston County, have been recognized for long years past as townships, duly and properly laid out and functioning as such under the Constitution and laws of the State of South Carolina. As was said by the Supreme Court of this State in *State ex rel. Dickinson v. Neely,* 30 S. C., 587; 9 S. E., 664; 3 L. R. A., 672: "All the townships in the State having received repeated legislative recognition as such, and this township in particular, it is too late now to question whether this township was territorially designated with the formalities required in the Act of 1868, originally creating townships."

In Dillon on Municipal Corporations (5th Ed.), § 232, it is said with reference to proof of the corporate existence of municipal corporations: "So corporate existence may be inferred and judicially noticed although the incorporating Act or charter cannot be found, if the fact of incorporation is clearly recognized by subsequent legislation not in contravention of any constitutional provision respecting the mode of creating corporations."

See, in this connection, 10 Barn. & Kress, 349, and other cases cited by the author.

This question raised by the petitioners in both cases cannot therefore be sustained, and I hold, in view of Section 11, Article 7, of the Constitution of 1895, that the township of Christ Church Parish and St. James Santee Township in Charleston County are bodies politic and corporate under the Constitution and laws of this State.

The further point was made by petitioners that, even though these Acts and Joint Resolutions of the General Assembly of South Carolina referred to above could be considered as recognizing the existence of the two townships in question, yet the same could not be held effective because the titles to such Acts and Joint Resolutions do not show that they create townships. This objection could not be sus-

tained for the same reasons hereinbefore stated, and, further, because, upon a study of most of said Acts and Joint Resolutions, it will appear that the names of the two townships are properly set forth in the titles to said Acts and Joint Resolutions.

In reference to Chirst Church bonds, the Joint Resolution proposing amendment to the Constitution, approved the 11th day of March, A. D. 1922, we find in the title the use of the words "township of Christ Church Parish" and in the *St. James Santee case,* the Joint Resolution approved April 4, 1925, we find the use of the words "township of St. James Santee" appearing in the title.

. The same thing is true of most of the other Acts of the General Assembly referred to above, and this objection cannot be sustained.

As a matter of common knowledge, these two political subdivisions, to wit, township of Christ Church Parish and St. James Santee township in Charleston County have been known and recognized as townships, taking their proper part in the governmental operations of the County for a. period of over 100 years.

Paragraph 8 in each of the petitions herein raises an additional question for a decision. There the petitioners allege that the delivery of the bonds under the Acts of the General Assembly referred to in said petitions, as approved the 8th day of February, A. D. 1923, and the 19th day of March, A. D. 1925, with respect to the township of Christ Church Parish, and the Act approved the 25th day of March, A. D. 1927, with respect to the bonds to be issued by St. James Santee Township, would be unlawful, if the bonds in kind and as such were delivered to a railroad corporation by the bond commissions. The petitioners alleging further that inasmuch as the two constitutional amendments provide that the proceeds of these said bonds shall be applied solely to the erection and maintenance of a railroad in and through said townships, said bonds must therefore be sold, and the

proceeds thereof applied directly by the respondents to the payment of the cost and expense of erecting and maintaining a railroad.

Under the allegations set forth in the answers herein, and from information presented to me, it is shown that said railroad will cost far in excess of said bond issues. Further, that the two Joint Resolutions in question distinctly provide as follows: "* * * Such bonds to be applied * * * under such restrictions and limitations as the General Assembly may prescribe. * * *"

These constitutional amendments having been duly adopted, the General Assembly, under the terms of the three Acts above mentioned, directly authorized the bond commissions in the township of Christ Church Parish and St. James Santee Township to make a contract with a railroad corporation organized under the laws of the State of South Carolina, either "to pay over to the said railroad corporation the net proceeds of the sale of said bonds in full, or in part, and in such installments as they see fit, or else to deliver the said bonds in part or in whole to such railroad corporation when and in their judgment such proportion of the railroad has been completed as the part of cash or bonds shall properly represent. * * *"

In view of the provisions set forth in the two constitutional amendments authorizing the General Assembly to provide the limitations and restrictions under which said bonds might be sold or delivered, the General Assembly has properly provided in the Acts hereinabove referred to for said bond commissions to either sell said bonds and pay over the proceeds, or to deliver said bonds in kind, and to make a contract thereabout with a railroad corporation, which contract would be a valid and binding agreement on said townships.

Even though the two constitutional amendments provide that the proceeds of the bonds shall be applied exclusively to the construction and maintenance of a railroad, yet it is

clearly shown by the remaining portion of said constitutional amendments that the General Assembly might provide for the manner in which a contract could be made. See in this connection *Germania Savings Bank v. Darlington,* 50 S. C., 337; 27 S. E., 846, and *Town of Darlington v. Atlantic Trust Co.* (C. C. A.), 68 F., and pages 857, 858.

In this view of the matter, the bond commissions in the two townships are authorized to make a contract to deliver the bonds in kind to the railroad company, or sell the bonds and turn over the money to the railroad company, as is authorized by the Acts of the General Assembly herein-above referred to.

In the opinion of the Court, no constitutional objection can be raised to this action on the part of said bond commissions, and such commissions may use their discretion in making contracts with a railroad corporation for delivery of the bonds in kind, if they see fit to do so. This is especially true, because, from the showing made before me, the cost of construction of said railroad will be far in excess of the amount of said bonds issued by both townships, and the proposed constitutional amendments in question, and the Acts of the General Assembly, the vote of the people in the two townships, clearly show that a railroad is desired through said territory, and the bonds in question may be turned over to such railroad corporation for construction purposes.

The contention of the petitioners as set forth in paragraph 8 of the two petitions is therefore denied.

It is therefore ordered, adjudged, and decreed that the said petitions filed herein be dismissed, and the injunction prayed for in each case be refused.

*Messrs. Lee Royall* and *R. M. Lofton,* for appellants.

*Messrs. Gorge Von Kolnitz,* and *Thomas & Lumpkin,* for respondents, cite: *Liberal construction given to constitu-*

462    · FLEMING *v.* ROYALL *et al.*

Opinion                              [145 S. C.—438]

*tional questions that may be raised affecting the passage of Acts and Joint Resolutions:* 16 S. C., 56; 76 S. C., 331. *Details of legislation need not be expressed in the title:* 74 S. C., 448; 23 S. C., 427; 30 S. C., 7 36 S. C., 125; 39 S. C., 307; 71 S. C., 457; 18 S. C., 466; 77 S. C., 260; 89 S. C., 84; 92 S. C., 313; 130 S. C., 434. *Form of ballot:* 12 C. J., 690; 120 S. C., 68. *Cases distinguished:* 130 S. C., 437. *Parishes are corporate entities:* 112 S. C., 31; 2 Stat., 328–30; Secs. 1305, 1307, Code; 61 S. C., 205; Sec. 471, Code; 30 S. C., 587; Dillon on Munic. Corp. (5th Ed), Sec. 232. *Art. 16, Sec. 1 Const. does not require more than one entry of each Journal:* 120 S. C., 68; 114 S. C., 419; 100 S. C., 165; 39 S. C., 307.

April 16, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

These two cases, by the consent of the parties, were heard together by Judge Grimball. The Circuit Decree contains a full discussion of the questions raised by the pleadings, and we approve, as satisfactory to this Court, both the reasoning and the conclusions of the trial Judge in both cases. An examination of the record on appeal does not disclose that the trial Court committed error as complained of by the appellants.

The judgment of this Court is that the judgment of the Circuit Court in each of the cases be affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, BLEASE, and CARTER concur.